

FILED
JUL 24 2015
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES VAN NORT,<br><br>                Plaintiff,<br>vs.<br><br>EDMUND G. BROWN, JR., et al.,<br><br>                Defendants. | CASE NO. 14cv1663-LAB(KSC)<br><br>**REPORT AND RECOMMENDATION RE DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 8.] |

Plaintiff Charles Van Nort, a state prisoner proceeding *pro se*, filed a civil rights Complaint pursuant to Title 42, United State Code, Section 1983, alleging defendants violated his rights guaranteed under the Eighth and Fourteenth Amendments of the United States Constitution, Title II of the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. [Doc. No. 1, at pp. 1-3.] Defendants have filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b) for failure to state a claim. [Doc. No. 8, at pp. 1-2.] Plaintiff has opposed the Motion. [Doc. No. 18.] Defendants also filed a Reply to plaintiff's Opposition. [Doc. No. 19.]

For the reasons outlined below, it is RECOMMENDED that defendants' Motion to Dismiss be GRANTED in part and DENIED in part. It is RECOMMENDED that the District Court GRANT defendants' Motion to Dismiss WITH PREJUDICE as to any official capacity claims against defendants Lozano, Paramo, Suglich, and Zuniga under the Eighth Amendment and any individual capacity claims against any of the

these defendants under the ADA and Rehabilitation Act. It is also RECOMMENDED that the District Court GRANT plaintiff's Motion to Dismiss plaintiff's Eighth Amendment, ADA, and Rehabilitation Act claims against defendants Lozano, Paramo, Suglich, and Zuniga WITHOUT PREJUDICE and WITH LEAVE TO AMEND. However, it is RECOMMENDED that the District Court DENY WITHOUT PREJUDICE defendants' Motion to Dismiss on qualified immunity grounds.

## ***Background***

The Complaint names the following defendants: (1) Governor Edmund G. Brown, Jr.; (2) Jeffrey Beard, Ph.D., Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); (3) J. D. Lozano, Chief, Office of Appeals, CDCR; (4) C. Zuniga, Appeals Examiner, Office of Appeals, CDCR; (5) D. Paramo, Warden, the Richard J. Donovan Correctional Facility ("R. J. Donovan"); and (6) W. Suglich, Associate Warden and ADA Coordinator, R. J. Donovan. [Doc. No. 1, at pp. 3-4.] Defendants Brown and Beard were dismissed without prejudice in a screening Order filed on October 20, 2014 for failure to state a claim. [Doc. No. 4, at pp. 5-6, 7.] In their Motion to Dismiss, defendants seek dismissal of all remaining defendants: (1) Lozano; (2) Paramo; (3) Suglich; and (4) Zuniga. [Doc. No. 8.]

According to the Complaint, plaintiff is a full-time wheelchair user assigned to Cell 125-W, Facility A, Building One, at R. J. Donovan. [Doc. No. 1, at p. 11.] Cell 125-W is designated for use by disabled persons in a wheelchair. [Doc. No. 1, at p. 11.] However, plaintiff claims the cell is "rather small" and does not comply with Title II of the ADA or the Rehabilitation Act. [Doc. No. 1, at pp. 11, 19.] As a result, he has "difficulty moving around the cell." [Doc. No. 1, at p. 11.] Plaintiff claims there is not enough room in Cell 125-W to allow plaintiff to "turn around without running into either the toilet, a bar that is sticking out into the room, the wall or the sink." [Doc. No. 1, at p. 12.] Plaintiff also claims he does not have enough space in Cell 125-W to "make a 90 degree turn" so he can move "from the bed to the cell door without bumping into something." [Doc. No. 1, at p. 12.]

Plaintiff complained to staff about the problems with the size of the cell, but he was told Cell 125-W is the largest cell in the facility. [Doc. No. 1, at pp. 11-12.] Plaintiff then filed a Reasonable Modification or Accommodation Request (Form 1824) on or about December 1, 2011. [Doc. No. 1, at p. 12, citing Ex. 1, at pp. 25-26.] In this Request, plaintiff explained he is a full-time wheelchair user and requires "wheelchair accessible housing." [Doc. No. 1, at p. 25.] Plaintiff also expressed his opinion that cells at R. J. Donovan "do not meet the needs of a person in a wheelchair," because they are not large enough to turn around inside the cell without hitting the wall, sink, toilet, or the bar on the wall of the cell. As a result, he requested one of the following: (1) placement in a single cell meeting his "ADA needs"; (2) placement in an "ADA helper program"; or (3) transfer back to the California Medical Facility "where these things exist and [his] needs can be met." [Doc. No. 1, at pp. 25-26.]

On December 6, 2011, plaintiff's Request was rejected for procedural reasons. Plaintiff was advised that his request did not "meet the criteria for processing as a CDCR Form 1824 as the issue raised is not subject to the Armstrong Remedial Plan (ARP)."[1] [Doc. No. 1, at p. 24.] Plaintiff was further advised he could raise these matters in a Form 602 appeal but should first submit a "CDCR Form 22 request for services." [Doc. No. 1, at p. 24.]

On or about June 3, 2013, plaintiff submitted a second CDC Form 1824. In this Request, plaintiff essentially repeated the allegations made in the CDC From 1824 he submitted on December 6, 2011 and requested that his cell be "brought into compliance

---

[1] The Armstrong Remedial Plan ("the Plan") refers to a remedial order issued in *Armstrong v. Wilson*, a class action in the Norther District of California involving a certified class of all present and future California state prison inmates and parolees with disabilities. The Plan enjoins practices that discriminate against disabled inmates in California prisons. *See generally Armstrong v. Wilson*, 124 F.3d 1019, 1021 (9th Cir. 1997); *Armstrong v. Davis*, 275 F.3d 849 (9th Cir.2001) (affirming order requiring submission of a remedial plan for compliance by the CDCR with the ADA and the Rehabilitation Act in California prisons). Alleged violations of the Armstrong Remedial Plan do not provide an independent basis for damages in this Court. Violations of the Armstrong Remedial Plan must be addressed through the procedures provided by the plan. *See Frost v. Symington*, 197 F.3d 348, 358–59 (9th Cir.1999).

with the ADA laws, so that wheelchairs are able to maneuver around in the cells without running into things." [Doc. No. 1, at pp. 12, 30.]

Plaintiff's June 3, 2013 Request was denied at the first, second, and third levels of review. [Doc. No. 1, at pp. 28-29, 38-39, 40.] At the First Level of Review, plaintiff was advised as follows by defendant Suglich, Associate Warden -- ADA Coordinator: "The issues you bring forward; specifically that your cell is not in compliance with ADA requirements, is being addressed at the statewide level through the ADA Structural Assessment process." [Doc. No. 1, at p. 40.] Plaintiff indicated he was dissatisfied with this response because it showed officials were aware of the problems but had done nothing to rectify them. [Doc. No. 1, at pp. 32, 39.]

Plaintiff's Request was denied at the Second Level of Review by defendant Paramo, Warden. [Doc. No. 1, at p. 39.] Defendant Paramo reasoned as follows: "[T]he statewide ADA Structural Assessment process is still ongoing. Therefore, [plaintiff] has failed to support his appeal issue(s) with sufficient evidence or facts to warrant modification of the First Level Response." [Doc. No. 1, at p. 39.] Plaintiff expressed dissatisfaction with this response because no one had addressed why wheelchair inmates were still being placed in cells without enough room to maneuver their wheelchairs. [Doc. No. 1, at p. 34.]

Plaintiff's Request was denied at the Third Level of Review by defendant C. Zuniga, Appeals Examiner, Office of Appeals. [Doc. No. 1, at pp. 28-29.] In denying the Request, the Appeals Examiner reasoned as follows:

> [T]his Appeals Examiner finds the institution's actions relative to [plaintiff's] request comply with the Armstrong Remedial Plan (ARP) and departmental policies.
>
> [Plaintiff] is identified as a participant in the [Disability Placement Program (DPP)] and identified as [a Full-Time Wheelchair User (DPW)]. [R.J. Donovan] is a designated DPP facility which is deemed appropriate for housing DPW inmates.
>
> Pursuant to ARP, all designated DPW inmates/parolees must be housed in a designated facility and require housing in a wheelchair accessible cell. ADA Coordinator [defendant] W. Suglich was contacted

1
2
    during the [Third Level of Review] and stated the [plaintiff's] current housing within Building "1", bed number 125L is a DPW wheelchair accessible bed within a DPW cell.

3 [Doc. No. 1, at p. 28.]

4     Based on the foregoing, plaintiff asserts that defendants have known about the
5 problems with the small size of the cells designated for wheelchair users and despite
6 their knowledge have refused to fix the problems. Instead, he contends that defendants
7 knowingly and maliciously left plaintiff in a cell that does not adequately address his
8 needs as a full-time wheelchair user. [Doc. No. 1, at pp. 14, 18-21.] He also claims
9 defendants' failure to address accessibility issues related to the size of his cell require
10 him to live in a "detrimental" environment which "amount[s] to deliberate
11 indifference" in violation of the Eighth Amendment prohibition against cruel and
12 unusual punishments, Title II of the ADA, and the Rehabilitation Act. [Doc. No. 1, at
13 pp. 10, 19.]. As a result, plaintiff claims to have suffered mental, emotional, and
14 physical pain and suffering. [Doc. No. 1, at pp. 10, 14.]

15 ***Discussion***

16     ***I.    Motion to Dismiss Standards.***

17     A plaintiff's complaint must provide a "short and plain statement of the claim
18 showing that [he] is entitled to relief." *Johnson v. Riverside Healthcare System, LP*,
19 534 F.3d 1116, 1122 (9th Cir. 2008) (citing Fed.R.Civ.P. 8(a)(2)). "Specific facts are
20 not necessary; the statement need only 'give the defendant[s] fair notice of what . . . the
21 claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 94
22 (2007).

23     A motion to dismiss under Federal Rule 12(b)(6) may be based on either a "'lack
24 of a cognizable legal theory' or 'the absence of sufficient facts alleged under a
25 cognizable legal theory.'" *Johnson v. Riverside*, 534 F.3d at 1121. A motion to dismiss
26 should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief
27 that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
28 "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion to dismiss, the Court must "accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 975 (9th Cir. 2007). However, it is not necessary for the Court "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555.

On the other hand, "[a] document filed *pro se* is 'to be liberally construed,' [citation omitted] and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. . . . " *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Particularly in civil rights cases, courts have an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 (9th Cir. 1985).

## II.    Section 1983 Claims.

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983). To prevail on a claim for violation of constitutional rights under Title 42, United States Code, Section 1983, a plaintiff must prove two elements: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege or immunity conferred by the Constitution or the laws of the United States. 42 U.S.C. § 1983; *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).

///

### III. *Official Capacity Claims.*

The Complaint names defendants Lozano, Paramo, Suglich, and Zuniga in their individual and official capacities and seeks monetary damages against them. [Doc. No. 1, at pp. 3-4, 22.] Defendants argue the Court should dismiss the claims against them in their official capacities, because the Eleventh Amendment does not permit damages claims against state officers in their official capacities.

"Put simply, the eleventh amendment bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, *i.e.*, money damages, rather than prospective, *e.g.*, an injunction." *Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988). The Eleventh Amendment does not bar actions against state officers in their personal or individual capacities. *Pena v. Gardner*, 976 F.2d 469, 472-473 (9th Cir. 1992).

On the other hand, Congress may abrogate state sovereign immunity under the Eleventh Amendment and the states can voluntarily waive it. *Holley v. California Dept. of Corrections*, 559 F.3d 1108, 1111-1112 (9th Cir. 2010). In *United States v. Georgia*, 546 U.S. 151, 154 (2006), the Supreme Court concluded that Congress validly and intentionally abrogated state sovereign immunity under the Eleventh Amendment for ADA violations. *Id.* at 154-159. "Title II authorizes suits by private citizens for money damages against public entities" that violate the ADA." *Id.*

Potential defendants under Title II of the ADA include "(a) any State or local government; (B) any department, special purpose district, or other instrumentality of a State or States or local government. . . ." 42 U.S.C. § 12131. Title II of the ADA applies to the operation of state prisons. In *United States v. Georgia*, 546 U.S. 151, for example, our Supreme Court concluded that a disabled inmate can sue the State for money damages under Title II of the ADA for "deliberate refusal of prison officials to accommodate [the inmate's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs" if the conduct in

question also constitutes deliberate indifference in violation of the Eighth Amendment prohibition against cruel and unusual punishments. *Id.* at 157-159.

With respect to the Rehabilitation Act, a state entity or program can waive sovereign immunity under the Eleventh Amendment when it receives federal financial assistance. *Sharer v. Oregon*, 581 F.3d 1176, 1178 (9th Cir. 2009). In *Douglas v. California Dept. of Youth Authority*, 271 F.3d 812 (9th Cir. 2001), the Ninth Circuit concluded "California has waived its sovereign immunity by accepting Rehabilitation Act funds." *Id.* at 819. "The same remedies are available for violations of Title II of the ADA and § 504 of the [Rehabilitation Act]." *Lovel v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002.) Since Title II of the ADA was modeled after Section 504 of the Rehabilitation Act, a plaintiff who has stated a claim under Title II of the ADA has stated a claim under Section 504. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

"As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law.' [Citation omitted.] For the same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991).

Based on the foregoing, it is apparent defendants may be sued in their official capacities under Title II of the ADA and Section 504 of the Rehabilitation Act, because suing an individual in his official capacity is the same as a suit against the government entity itself. Therefore, if plaintiff states a viable claim under the ADA or the Rehabilitation Act based on conduct by the defendants, it does not appear there would be grounds for dismissing them in their official capacities. However, to the extent defendants Lozano, Paramo, Suglich, and Zuniga have been sued in their official

capacities under Section 1983 for violating the Eighth Amendment, they are immune from suit under the Eleventh Amendment. It is therefore RECOMMENDED that defendants' Motion to Dismiss be GRANTED to the extent it seeks dismissal of any claims against defendants in their official capacities for violating plaintiff's constitutional rights under the Eighth Amendment. Since plaintiff cannot amend the Complaint to correct this defect it is RECOMMENDED that plaintiff's official capacity claims under Section 1983 be dismissed WITH PREJUDICE.

### IV. *Individual Capacity Claims*.

As noted above, the Complaint also names defendants Lozano, Paramo, Suglich, and Zuniga in their individual capacities and includes allegations that defendants violated plaintiff's rights under the ADA and the Rehabilitation Act. [Doc. No. 1, at pp. 3-4, 15-17, 18-21.] Defendants contend plaintiff's ADA and Rehabilitation Act claims against them in their individual capacities should be dismissed because these Acts do not permit recovery against individuals. [Doc. No. 8-1, at p. 17.] Defendants are correct.

In *Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002), the Ninth Circuit held as follows: "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." *Id.* at 1156. The Ninth Circuit reasoned that such claims are "barred by the comprehensive remedial scheme of those Acts." *Id.* In other words, to the extent plaintiff states viable claims against defendants under the ADA and Rehabilitation Act, he is barred in Federal Court from pursuing any such claims against defendants in their individual or personal capacities.[2] It is therefore RECOMMENDED that the District Court GRANT defendants' Motion to Dismiss plaintiff's individual capacity claims based on alleged violations of the ADA

---

[2] Of course, to the extent plaintiff states viable claims against defendants under Section 1983 for violating his constitutional rights, he is not barred by the Eleventh Amendment from pursuing his claims against them in this action in their personal or individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

and Rehabilitation Act against defendants Lozano, Paramo, Suglich, and Zuniga. Since plaintiff cannot amend the Complaint to correct this defect, it is RECOMMENDED that dismissal of plaintiff's individual capacity claims under the ADA and the Rehabilitation Act be dismissed WITH PREJUDICE.

### V. *Deliberate Indifference in Violation of the Eighth Amendment.*

The Eighth Amendment does not require prisons to be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "To the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. However, the Eighth Amendment does proscribe the "unnecessary and wanton infliction of pain," which includes those sanctions that are "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976). This includes not only physical torture, but any punishment incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotations and citations omitted).

To prevail on an Eighth Amendment claim for deprivation of humane conditions of confinement, a prisoner must satisfy two requirements: one objective and one subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the objective requirement, the prison official's acts or omissions must be objectively, sufficiently serious and result in the denial of the minimal civilized measure of life's necessities. *Id.* (internal citations and quotations omitted). In this regard, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (internal quotations and citations omitted).

Under the subjective component, a prison official must have a "sufficiently culpable statement of mind." *Id.* at 834. "[T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk to inmate health or safety;

the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Conversely, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In some cases, inmates confined to wheelchairs have been able to set forth facts and circumstances sufficient to establish a claim for deprivation of humane conditions in violation of the Eighth Amendment when prison officials deliberately fail to accommodate basic disability-related needs for mobility, hygiene, medical care, and/or participation in programs, services, or activities. For example, our Supreme Court in *United States v. Georgia*, 546 U.S. 155 877 (2006), indicated a paraplegic inmate confined to a wheelchair stated a viable claim under Section 1983 for deprivation of humane conditions of confinement. *Id.* at 155-157. The inmate alleged he had been confined for 23 to 24 hours per day in a 12 foot by 3 foot cell. He was unable to turn his wheelchair around to access basic facilities, such as the toilet and shower, without assistance, which was often denied. In addition, the inmate alleged he injured himself several times while attempting to transfer from the wheelchair to the shower or toilet on his own; had been forced to sit in his own feces and urine because prison officials refused to assist him; and was denied access to "virtually all prison programs and services" because of his disability. *Id.*

In another case entitled *Simmons v. Cook*, 154 F.3d 805 (8th Cir. 1998), the Eighth Circuit concluded prison officials violated the Eighth Amendment rights of two wheelchair bound inmates who were placed for disciplinary reasons in four- by eight-foot maximum security cells for thirty-two hours. *Id.* at 806-809. During this time period, the inmates missed four consecutive meals because their wheelchairs could not maneuver around the cell bunk to reach the food tray slots. Since the cells were not equipped with handrails, the inmates were also unable to use the toilets for thirty-two hours. In addition, prison officials did nothing to provide the inmates with any

14cv1663-LAB(KSC)

assistance even though it was obvious their basic needs to eat and use the toilet could not be met in the maximum security cells. *Id.*

In *LaFaut v. Smith*, 834 F.2d 389 (4th Cir. 1987), the Fourth Circuit found the Eighth Amendment had been violated where the record showed there were unexplained, "inordinate delays" in accommodating the basic needs of a paraplegic inmate even though prison officials were of the inhumane conditions of his confinement. *Id.* at 393-394. The inmate was "confined for nearly eight months" in facilities lacking adequate toilets. For three of these months, the inmate was unable to transfer from his wheelchair to the toilet. In order to access the toilet, the inmate had to drag his body across the floor and then pull himself up onto the toilet. Since the inmate did not have use of his legs, the size and shape of the toilet also created an unreasonable risk of falling forward or into the toilet. To reduce the number of trips to the toilet, the inmate elected to use a catheter to urinate. *Id.* at 392. After three months, when the inmate contracted a kidney infection, he was finally transferred to a cell with an adequate toilet. The mounting of a handicap bar was all that was required to provide the inmate with an adequate toilet in the new cell, and the warden, who had been aware of the conditions in the prior cell, could not explain the three-month delay in resolving the problem. *Id.* at 392-393. The warden also refused to modify toilet facilities near the inmate's work assignments so the inmate was required to travel a long distance several times a day up a hill to a locked toilet where he was often unable to find anyone with a key. *Id.* at 393. In addition, when placed in a segregation unit with an inadequate toilet, the inmate fell off the toilet and broke his leg. *Id.* Although acknowledging that prison administrators should be afforded "wide-ranging deference" in adopting and executing polices and practices, the Eighth Circuit said "[p]rison officials should not ignore the basic needs of a handicapped individual or postpone addressing those needs out of mere convenience or apathy." *Id.* at 394.

///

///

### *1.   Specific Allegations Against Defendants Lozano and Zuniga.*

Defendants seek dismissal of defendants Lozano and Zuniga, because the only allegations against them in the Complaint are based solely on their involvement in denying plaintiff's administrative appeals through the prison grievance system. Defendants contend these allegations are insufficient to state a claim against them under Section 1983.

As defendants contend, it is generally insufficient to state a claim for liability under Section 1983 when a prisoner only alleges that prison administrators denied administrative grievances with no facts to indicate they had any active or direct participation in an alleged constitutional violation. *Sheehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999). "Ruling against a prisoner on an administrative complaint does not cause or contribute to the [alleged] violation." *George v. Smith*, 503 F.3d 605, 609 (7th Cir. 2007). "A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *Id.*

On the other hand, it is possible to state a Section 1983 claim against prison administrators, such as an appeals coordinator who denied a grievance, if the plaintiff specifically alleges facts indicating there was an ongoing constitutional violation, the administrator had actual knowledge about the ongoing constitutional violation, and had the authority and opportunity to act to prevent it but failed to do so. *See, e.g., Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (stating that "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability" under Section 1983 but may be liable under Section 1983 if they were personally involved in the constitutional violation and there is a "sufficient causal connection" between wrongful conduct by the supervisor and the constitutional violation); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (stating that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them).

Here, for the reasons outlined more fully below, plaintiff has not alleged facts sufficiently serious enough to indicate there was an ongoing violation of his constitutional rights under the Eighth Amendment. It is therefore RECOMMENDED that the District Court GRANT defendants' Motion to Dismiss plaintiff's Eighth Amendment claims against defendants Lozano and Zuniga for failure to state a claim.

### 2. *Allegations Against Defendants Lozano, Paramo, Suglich, and Zuniga.*

The allegations against all of the defendants Lozano, Paramo, Suglich, and Zuniga do not state a claim for a violation of the Eighth Amendment's prohibition against cruel and unusual punishments. Plaintiff's allegations are not serious enough to establish "the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. at 834. Plaintiff's chief complaint is only one of inconvenience – that the size of the cell is "rather small" which makes it "difficult" to move around in his wheelchair without bumping into things. [Doc. No. 1, at p. 11.] In other words, plaintiff does not allege he cannot move around the cell, only that it is more difficult to do so. There are no allegations indicating the conditions in plaintiff's cell are unsafe or that plaintiff has been seriously injured because of an unsafe condition in his cell. Nor are there any allegations suggesting plaintiff is unable to access the bed, sink, or toilet, or move in and out of his cell to access programs and services when necessary.

Plaintiff has also not stated any facts from which a jury could conclude defendants acted with deliberate indifference to plaintiff's health or safety. Plaintiff merely alleges defendants knew the size of his cell made it more difficult for him to move about but failed to fix the problem. The Complaint then states a legal conclusion that defendants' failure to address the size of his cell constitutes "deliberate indifference." [Doc. No. 1, at pp. 10, 19.] Since the facts alleged do not suggest there was an unsafe or inhumane condition in plaintiff's cell, or that prison officials failed to accommodate a basic disability-related need, a reasonable jury would be unable to conclude defendants were deliberately indifferent to plaintiff's health or safety. In fact,

the most reasonable inference from the facts alleged is that defendants responded reasonably to plaintiff's disability under the circumstances, because he was assigned to the largest cell in the facility that is specifically designated for disabled persons in a wheelchair. [Doc. No. 1, at pp. 11-12.]

Based on the foregoing, plaintiff has failed to state facts sufficient to establish that prison officials were deliberately indifferent to his health or safety or to a basic disability-related need. It is therefore RECOMMENDED that the District Court GRANT plaintiff's Motion to Dismiss plaintiff's Eighth Amendment claims of deliberate indifference against defendants Lozano, Paramo, Suglich, and Zuniga.

## VI. *ADA and Rehabilitation Act Claims.*

To prove a violation of Title II of the ADA by a public entity, a plaintiff must show: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Duvall v. County of Kitsap*, 260 F3d at 1124. In addition, "a plaintiff must prove intentional discrimination on the part of the defendant" to recover monetary damages under Title II of the ADA or Section 504 of the Rehabilitation Act. *Id.* at 1138. "Intentional discrimination" means "deliberate indifference" which requires "both knowledge that a harm to a federally protected right is substantially likely, and a failure to action upon that likelihood." *Id.* at 1139. To fulfill the "knowledge" requirement of a claim for intentional discrimination, a plaintiff must show he alerted the public entity to a need for accommodation and identified a "specific reasonable" and "necessary" accommodation that the defendant failed to provide." *Id.* "[I]n order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

Plaintiff has not stated facts sufficient to establish that he was subjected to intentional discrimination in violation of Title II of the ADA or Section 504 of the

Rehabilitation Act. The facts alleged in the Complaint do not indicate that defendants discriminated against plaintiff for any reason because of his disability. Rather, the facts alleged indicate defendants acknowledged and reasonably accommodated plaintiff's disability by assigning him to the largest cell in the facility that was specifically designated for disabled persons in wheelchairs. In addition, there are no facts indicating plaintiff was excluded from participation in or denied benefits, services, or programs because of his disability. Nor could it be said based on the facts alleged that plaintiff made defendants aware of a "specific reasonable" and "necessary" accommodation that they failed to provide. Under these circumstances, this Court cannot conclude plaintiff has stated viable claims against any of the defendants for violations of the ADA or the Rehabilitation Act. It is therefore RECOMMENDED that the District Court GRANT defendant's Motion to Dismiss plaintiff's ADA and Rehabilitation Act claims against defendants Lozano, Paramo, Suglich, and Zuniga.

### VII. *Leave to Amend.*

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995) (internal quotation marks omitted). The "rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant. Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleadings than the person who benefits from the representation of counsel." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (internal quotation marks omitted). Although unlikely, it is possible plaintiff might cure the defects in his Complaint by alleging additional facts. It is therefore RECOMMENDED that the District Court GRANT plaintiff leave to amend his Complaint.

### VIII. *Qualified Immunity.*

Defendants argues they are entitled to qualified immunity from suit because the allegations in the Complaint, along with the documents plaintiff has attached to the

Complaint, show they acted in an objectively reasonable manner based on a belief their conduct was lawful. In their arguments, defendants emphasize "the importance of resolving immunity questions at the earliest possible stage in litigation." [Doc. No. 8-1, at p. 19, quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).]

Qualified immunity shields government officials performing discretionary functions from liability for civil damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638–640 (1987). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526-527 (1985). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* at 526.

A two-step process is applied to determine whether government officials are entitled to qualified immunity. "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. [Citation omitted.] Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. [Citation omitted.] Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. [Citation omitted." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

For the reasons outlined above, plaintiff has not alleged a viable constitutional violation against defendants Lozano, Paramo, Suglich, and Zuniga. Because it appears

possible for plaintiff to amend the Complaint to state viable claims against these defendants and because there is a policy favoring liberal amendment, the Court is unable to conclude definitively at this time whether defendants are entitled to qualified immunity. Under these circumstances, it is RECOMMENDED that the District Court DENY defendants' Motion to Dismiss on qualified immunity grounds WITHOUT PREJUDICE. Defendants Lozano, Paramo, Suglich, and Zuniga should be permitted to renew their request for dismissal on qualified immunity grounds in a summary judgment motion or in another motion to dismiss if plaintiff amends the Complaint.

### *Conclusion*

Have reviewed defendants' Motion to Dismiss, the undersigned Magistrate Judge submits this Report and Recommendation to the United States District Judge assigned to this case pursuant to Title 28, United States Code, Section 636(b)(1). For all of reasons outlined above, IT IS HEREBY RECOMMENDED that the District Court issue an Order:

(1) GRANTING defendants' Motion to Dismiss WITH PREJUDICE to the extent it seeks dismissal of any claims against defendants Lozano, Paramo, Suglich, and Zuniga in their official capacities for violating plaintiff's constitutional rights under the Eighth Amendment;

(2) GRANTING defendants' Motion to Dismiss WITH PREJUDICE to the extent it seeks dismissal of any claims against defendants Lozano, Paramo, Suglich, and Zuniga in their individual or personal capacities based on alleged violations of the ADA and the Rehabilitation Act;

(3) GRANTING defendants' Motion to Dismiss as to plaintiff's Eighth Amendment, ADA, and Rehabilitation Act claims against defendants Lozano, Paramo, Suglich, and Zuniga WITHOUT PREJUDICE and WITH LEAVE TO AMEND; and

(4) DENYING WITHOUT PREJUDICE defendants' Motion to Dismiss defendants Lozano, Paramo, Suglich, and Zuniga on qualified immunity grounds. Defendants may renew their request for dismissal on qualified immunity grounds in a

summary judgment motion or in another motion to dismiss if plaintiff amends the Complaint.

IT IS HEREBY ORDERED that ***no later than August 24, 2015*** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties ***no later than August 31, 2015***. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Date: July 24, 2015

KAREN S. CRAWFORD
United States Magistrate Judge